**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM D. RODGERS | : | |
| | : | |
| Appellant | : | No. 2377 EDA 2017 |

Appeal from the Judgment of Sentence February 16, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0006200-2015

BEFORE:  GANTMAN, P.J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JULY 19, 2018**

Appellant, William D. Rodgers, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for rape of an unconscious person, sexual assault, indecent assault without consent, and indecent assault of an unconscious person.[1]  We affirm.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises two issues for our review:

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S POST-SENTENCE MOTION ALLEGING THAT THE GUILTY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

---

[1] 18 Pa.C.S.A. §§ 3121(a)(3); 3124.1; 3126(a)(1), (4), respectively.

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR MISTRIAL BASED ON THE COMMONWEALTH'S FAILURE TO DISCLOSE THE CONTENT OF AN ALLEGED ORAL CONFESSION PRIOR TO TRIAL.

(Appellant's Brief at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable James P. Bradley, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed September 14, 2017, at 2-13) (finding: **(1)** Victim testified that she woke up from sleeping on Appellant's couch to Appellant having sex with her; Victim testified she tried to push Appellant away, but she could not move, felt "numb" and "weird," and told Appellant to "get off"; Victim said Appellant apologized afterwards and told her not to go to police; police documented Victim's bruises, which were consistent with her version of events; defense counsel thoroughly cross-examined Victim and impeached her credibility with inconsistencies between report she gave to police, her answers to nurse's questionnaire, Victim's preliminary hearing testimony, and her trial testimony; defense counsel also brought to light discrepancies concerning timing of events, Victim's condition throughout day, and her ability to recall; defense counsel thoroughly cross-examined police witnesses and strongly implied police investigation was "shoddy" and "suspect"; case turned on credibility and jury, as is its prerogative and in

- 2 -

accord with its duty, decided Victim's testimony was credible and rejected Appellant's version of events; jury decided Appellant engaged in intercourse with Victim without her consent and while she was unconscious; jury's verdict is not so contrary to evidence as to shock one's sense of justice; thus, Appellant's challenge to weight of evidence fails; **(2)** Detective Laughlin testified at trial that before Appellant reduced his statement to police to writing, he told detective that after Victim dozed off and closed her eyes, Appellant got up, knelt between Victim's legs with his penis exposed, and attempted to have intercourse with Victim, but Appellant could not maintain erection due to intoxication; in Appellant's written statement to police, Appellant maintained that he awoke to Victim fondling his penis and trying to have sex with him; content of Appellant's oral statement was not disclosed to defense or prosecution prior to trial, and parties heard substance of oral statement for first time during Detective Laughlin's trial testimony; nevertheless, defense counsel did not make contemporaneous objection to this testimony; at close of prosecutor's direct examination of Detective Laughlin, parties appeared before court at sidebar to address different issue and defense counsel merely indicated he was "disturbed" by Detective Laughlin's testimony concerning Appellant's oral statement, which had not been documented in police investigative report; defense counsel then cross-examined Detective Laughlin about why he would not document Appellant's oral statement in detective's report or communicate that statement to

prosecutor and defense prior to trial; defense counsel suggested detective's failure to document Appellant's oral statement was at odds with police protocol; significantly, defense counsel did not move for mistrial until after he finished cross-examining detective; defense counsel should have lodged objection when Detective Laughlin testified about Appellant's oral statement; if defense counsel had timely objected, then court could have issued instruction directing jury to disregard testimony about Appellant's oral statement; court properly denied motion for mistrial, where Appellant failed to lodge contemporaneous objection to offending testimony). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/18

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    CP-23-CR-6200-2015

              vs.                  :

     WILLIAM D. RODGERS        :

                                           :

Christopher Boggs, Esquire, on behalf of the Commonwealth
Daniel J. Donohue, Esquire on behalf of the Defendant

## O P I N I O N

Bradley, J.                            **FILED:** 9-14-17

At the conclusion of a jury trial the Defendant, William Rodgers, was found guilty of rape of an unconscious victim,[1] sexual assault,[2] indecent assault[3], and indecent assault of an unconscious person.[4] An aggregate sentence of thirty-six to seventy-two months to be followed by eight years of probation was imposed on February 16, 2017. In a post-sentence motion filed on February 22, 2017 Defendant challenged, *inter alia*, the weight of the evidence supporting the verdict. After a hearing on May 23, 2017, an Order denying Defendants' post-sentence motion was entered on June 19, 2017. Defendant has filed a timely Notice of Appeal, necessitating this Opinion. In a Concise Statement of Matters Complained of on Appeal filed on August 21, 2017 Defendant claims that the verdict was

---

[1] 18 Pa.C.S.A. § 3121(A)(3)
[2] 18 Pa.C.S.A. § 3124.1
[3] 18 Pa.C.S.A. § 3126(A)(1)
[4] 18 Pa.C.S.A. § 3126(A)(4)



against the weight of the evidence and that the trial court erroneously denied the motion for a mistrial that was lodged during the trial.

## Weight of the Evidence

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

Commonwealth v. Widmer, 744 A.2d 745, 751–52 (Pa. 2000). In *Widmer* a jury found the defendant guilty of rape of an unconscious person. After a night of drinking the victim's boyfriend found the defendant in bed engaging in sexual intercourse with the victim. Widmer testified that the intercourse was consensual. The victim testified that "she had been sleeping and had awakened to find Widmer on top of her with his penis in her vagina." Id. at 749. The trial court granted the defendant's motion for a new trial, finding that the verdict "shocked the court's conscience." In granting the defendant's motion the court found that the victim's testimony was "rife with uncertainty." Particularly, she was unable to recount the events of

2

the night while the defendant's testimony was "succinct and unrebutted." Thus, the court found the defendant credible, accepted his testimony and determined that the verdict was against the weight of the evidence. The Superior Court reversed and ultimately, the Supreme Court held that the trial court had committed an abuse of discretion in granting a new trial. The high court explained that it is important to consider testimony in its relevant context. The defendant was charged with "rape of an unconscious person." "A person is unconscious for purposes of the statute when they lack the conscious awareness they would possess in the normal waking state." The trial court credited the testimony of the defendant and rejected the victim's testimony because she was unable to recall the assault. This was an abuse of discretion:

> A person assaulted while sleeping would be unable to recount with certainty events that occurred while she was asleep and simultaneous to her awakening. A sleeping person may be confused upon being awakened to encounter a stranger on top of her engaging in sexual intercourse. In those circumstances a witness would be unable to refute the testimony of her attacker regarding alleged conversation or actions that took place between the two of them while she was asleep. By finding the testimony of Ms. McCusker lacking in weight in contrast to the testimony of appellant, the trial court failed to properly consider the context from which that testimony sprang and the nature of the charges at issue. To find a serious injustice had occurred because appellant was better able to explain how he happened to engage in sexual intercourse with Ms. McCusker than she, ignores the context in which the act of intercourse occurred in this case.

Id. at 753-54.

3

"To find Ms. McCusker not credible because she could not recall what appellant said or did while she was sleeping was an abuse of discretion and a clear invasion of the exclusive domain of the jury." Id. at 752. "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" Id.

On August 17, 2015, the Victim in this case was renting an upstairs room in the Defendant's home on Garfield Road in Havertown, PA. N.T. 11/9/16 pp. 19-21. She had known the Defendant and lived in his home for about eleven days. The Victim was out for the day and admittedly had a few drinks before a friend brought her home to Garfield Road at about 10:00 p.m. Id. at 24, 28, 60. She joined the Defendant in the living room, sitting on the edge of the couch as she ate a hoagie and spoke to her sister on her phone. Id. at 26. The Victim testified that she spoke to her sister until about 1:00 a.m. while the Defendant was watching "TV" on his laptop. The Victim ended the call and the Defendant showed her a video on the laptop. After watching the video she fell asleep on the couch.

The Victim testified that when she woke up the Defendant was having sex with her. He was holding her arms and his penis was inside her. Id. at 29-333. She testified that she tried to get the Defendant off of her but could not move. She felt "numb" and "weird" and

4

told the Defendant to get "off." Id. at 29, 31. The Defendant got off and stood in front of her with his pants down. She testified that after waking up she felt "like Jell-O" and crawled upstairs to her attic room. Id. at 32- 33.

The Victim called a friend, Johnny, to pick her up and at about 9:00 p.m. Johnny took her to the Haverford Township Police Station where she met with Detective Albert Matthew Hufnal. Id. at 34-35. The Victim testified that before she left Garfield Road the Defendant said that he was "sorry" and asked her not to go to the "cops." Id. at 31. Detective Hufnal interviewed the Victim and took photographs of her bruised arms and legs, bruises that were consistent with the Victim's allegations. Id at 34-35. After reporting the incident Johnny drove the Victim to Delaware County Memorial Hospital where they were met by Detective Hufnal and a "rape kit" was completed by a sexual abuse nurse specialist. Id. at 76.

Detective Steve Laughlin arrested the Defendant at his residence on August 18, 2016. Id. at 104. At the police station Defendant was "processed" and advised of his *Miranda* rights. Id. at 104-110. Defendant waived his rights and agreed to an interview. A verbal interview preceded Defendant's written statement.[5] Throughout the interview the Defendant referred to the Victim as "Jenny." He confirmed that she was his tenant and recounted that between 3:00 a.m. and 4:00 a.m. he sat on the living room couch with her watching YouTube videos. Id. at 111. She started to doze off and laid down on the couch. "He admitted that he got up and kneeled between her legs with his penis exposed and attempted

---

[5] In a "Supplemental Narrative" to the Incident Report (Exhibit C-10) Detective Laughlin reported that Defendant gave both a verbal and written statement after waiving his *Miranda* rights. A written statement was provided to the Defendant in pre-trial discovery. The substance of the verbal statement, as testified to by Detective Laughlin here, was not transcribed and was not provided, although its existence was documented. Detective Laughlin testified that he took notes during the interview and destroyed his notes after the Incident Report was completed. It is this evidence which formed the basis for Defendant's motion for a mistrial due to the Commonwealth's alleged violation of Rule 573, Pretrial Discovery and Inspection. The claim that the trial court erroneously denied the motion for a mistrial is discussed *infra*.

to have intercourse with her but was having trouble getting an erection because he was intoxicated. The Victim woke up and said that she couldn't believe that he was trying to have sex with her and pushed him off. Id.

A written statement followed. See Exhibit C-8. This statement was written and signed by the Defendant. In the written statement the Defendant said that both he and the Victim fell asleep on the couch and that he awoke to the Victim fondling his "private parts" and trying to put his penis in her vagina. Id. at 113. He continued, "She opened her eyes and said, Bill, I can't believe you're trying to have sex with me. I said, we both were. She said, I thought you were Jeff. Then she said, I'm fucked up. I'm going to bed. And I said, good night." Id. at 113. In his statement Defendant maintained that he never penetrated her: "She had her hand on my penis, trying to put it in her vagina. We were both drunk. Now she's trying to act like she's the victim. We both — we playing and fondling." Id. at 113-14.

Each of the Commonwealth's witnesses was subjected to extensive cross examination. The Victim's credibility was impeached with discrepancies between the report she gave to Detective Hufnal, the seventeen page questionnaire in which the sexual assault nurse specialist recorded her responses during her examination, preliminary hearing testimony and her trial testimony. Defense counsel questioned the fact that she alleged that the rape occurred at sunup but reported to police that it occurred at 3:00 a.m. and then waited until 9:00 p.m. to report to the police station. He brought that fact that she was on probation and had served time in state prison before the jury and suggested that she did not report the incident immediately because she was afraid that a report might result in a violation of parole or probation. A multitude of discrepancies concerning the timing of events, the Victim's

condition throughout the day and her ability to recall and truthfully testify were suggested throughout cross-examination. See N.T. pp. 45-99. Defense counsel subjected Detective Laughlin's actions in completing the Advice of Rights form himself to a very thorough cross examination and further suggested that the detective's failure to document the Defendant's allegedly verbal "confession" was highly implausible. In no uncertain terms defense counsel strongly implied that the entire police investigation was both shoddy and suspect and strenuously argued that the Haverford detectives overreached by seizing Defendant's cell phones and computer, items that were never subjected to forensic analysis. See N.T. 11/9/16 pp. 119-127 & 159. Among other missteps, Detective Hufnal admittedly made "mistakes" in the Affidavit of Probable Cause. Id. at 18-49. He failed to submit the Victim's urine sample for testing and did not review blood test results. Id. at 151. Although the Victim suggested that possibly she had been drugged, when executing a search warrant the detective failed to seize partially consumed drinks to submit for testing. Id. at 162. Defense counsel questioned the detective extensively regarding police protocol that permitted Detective Laughlin to destroy his interview notes, suggesting that evidence had been destroyed and that the Defendant's statements were purposefully not provided in discovery. See id. pp. 164-70. In closing argument he assailed the Victim's credibility and her character and described the police investigation as "sneaky," "sloppy" and "self-serving." See id. at 9-27.

"A person commits [rape] a felony of the first degree when the person engages in sexual intercourse with a complainant: (3) Who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring." 18 Pa.C.S.A. §

7

3121(a)(3). Sexual assault is committed where a "person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. A "person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (1) the person does so without the complainant's consent; or (4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring." 18 Pa.C.S.A. § 3126.

In many respects the Defendant's statement and the Victim's testimony were similar. Both recounted that the Victim arrived at the Garfield Road residence where the Defendant was sitting in the living room. After a period of time she watched videos with the Defendant on his lap top computer. They both fell asleep. At this point their accounts diverge. The Victim testified that when she awoke the Defendant was holding her down and his penis was in her vagina. She tried to get him off of her but could not move and told him to "get off." Photos of bruises on her arms and legs corroborated her account. In his written statement the Defendant maintained that *he* awoke with the Victim trying to put his penis in her vagina. She said, "I can't believe you're trying to have sex with me" and then said that she thought he was someone else.

This case turned completely on credibility and the jury, as is its prerogative and in accord with its duty, determined that the Victim's testimony was credible. Perceived discrepancies in her statements to others and in court, a prior criminal conviction and her

8

arguably questionable behavior were squarely before the jury. Nevertheless the jury found her credible. "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Charlton, 902 A.2d 554, 561 (Pa. Super. 2006)(it is "within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge appellant guilty"). In circumstances such as these, the trial court must decline the invitation to sit as a "thirteenth juror." See Widmer, supra. It has been long-recognized "that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." Charlton, supra, at 562. The jury's verdict was grounded in its determination that the Defendant engaged in intercourse with the victim without her consent and when she was unconscious. This credibility determination is not so "contrary to the evidence as to shock one's sense of justice" and the verdict should not be disturbed.

## Discovery

As set forth above, Detective Laughlin testified that before the Defendant reduced his statement to writing he told the detective that after the Victim "dozed off and closed her eyes...he got up.... He was kneeling in between her legs with his penis exposed. Her pants were down.... He ...started to attempt to have intercourse with her, but he was having issues getting an erection due to him being intoxicated. He said he continued, and at one point she opened her eyes and stated something of the fact, Oh my God, I can't believe you're trying

9

to have sex with me. At that point I believe she pushed him off, and they separated. " N.T. 11/9/2016 p. 111.

In the written statement that immediately followed Defendant recounted that after spending time "laughing and giggling" with the Victim they both fell asleep. "[He] awoke to [the Victim] fondling my private parts as she tried to ....pot(sic) my penis into her vagina. She opened her eyes and said, Bill, I can't believe you're trying to have sex with me. I said, we both were. She said, I thought you were Jeff. Then she said, I'm fucked up. I'm going to bed." Id. at 113.

Defense counsel did not make a contemporaneous objection when Detective Laughlin testified as to the details of the Defendant's verbal statement. The prosecutor immediately moved on to inquiries regarding the Defendant's written statement. He did not mention the verbal statement again during the course of the trial.[6] At the close of the prosecutor's direct examination the Court called the attorneys to the Sidebar to address another issue. During the course of that discussion defense counsel stated that he was "disturbed" that Detective Laughlin testified about the oral statement when its contents were not documented in the investigative report. Id. at 117-118. The Sidebar conference concluded and defense counsel began his cross-examination. After posing a line of questions that raised the specter that Defendant's *Miranda* waiver was given under coercive circumstances defense counsel asked Detective Laughlin why he failed to document the substance of Defendant's verbal statement and why it was not communicated to the prosecutor and supplied to the defense. Id. at 122-27. Defense counsel embarked on a line of questioning that spanned five pages and

---

[6] By all accounts this aspect of Detective Laughlin's testimony was unexpected. Defendant does not claim that the prosecutor knowingly withheld evidence.

10

suggested that Detective Laughlin's failure to share the statement and the convenient destruction of his notes was incredulous and at odds with police department protocol. Id.

After Detective Laughlin's testimony concluded defense counsel moved for a mistrial, and in support cited the Commonwealth's failure to provide the contents of the verbal admissions in Discovery. See id. pp.130-133.

A mistrial is an extreme remedy necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." Commonwealth v. Lopez, 57 A.3d 74, 83–84 (Pa. Super. 2012) *citing* Commonwealth v. Parker, 957 A.2d 311, 319 (Pa. Super. 2008). "A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice." Id. (mistrial inappropriate where defendant failed to request a continuance pursuant to Pa.R.Crim.P. 573 where Commonwealth's uncooperative witness was located immediately before trial and the Commonwealth was unable to provide defendant of the substance of her testimony).

Defendant's motion for a mistrial rested on the allegation that the Commonwealth violated the rules of discovery when it failed to provide the substance of Defendant's verbal statement prior to trial. "The purpose of discovery is to 'afford a defendant the opportunity to discover evidence which he did not know existed, as well as to seek possession of evidence of which he was aware.'" Commonwealth v. Hussmann, 485 A.2d 58, 61 (Pa. Super. 1984) (Commonwealth was not required to disclose its midtrial acquisition of copy of defendant's deposition taken in earlier civil action). See also Commonwealth v. Starks, 450 A.2d 1363, 1364 (Pa. Super. 1982) ("late disclosure of tape of interview with victim did not deny fair trial

11

where defendant already had victim's contemporaneous written statement, and declined court's remedial offers"); Commonwealth v. Williams, 441 A.2d 1277, 1279–80 (Pa. Super. 1982) ("loss of victim's formal statement did not deny due process where her testimony cohered with contemporaneous police report and defendant declined to test her credibility with aid of report.")

Upon a defendant's request, the disclosure of any "oral confession or inculpatory statement and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth" is mandatory. Pa. R. Crim. P. 573(b)(1), Pretrial Discovery and Inspection. The duty to provide discoverable material is continuing. Pa.R.Crim.P. 573(D). Subsection 573(E) provides the remedies available for failure to comply with the Rule's mandate: "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances."

The supplemental entry in the Investigative Report that was provided in discovery (Exhibit C-10) states that Defendant gave both written and verbal statements. When Detective Laughlin testified as to the substance of the alleged verbal statement it was incumbent upon defense counsel to lodge a contemporaneous objection. See generally Commonwealth v. Griffin, 412 A.2d 897, 901 (Pa. Super. 1979) (contemporaneous objection is required as the most convenient method of preventing a party from "permitting error to

12

insinuate itself into the record and complaining thereafter.") The panoply of remedies available for a discovery violation would in that way become available through the exercise of the court's discretion. In particular, in this case an instruction directing the jury to disregard testimony concerning the verbal statement would have served to eliminate possible prejudice that might deprive the Defendant of an unfair trial. See e.g. Commonwealth v. Gillen, 798 A.2d 225, 231 (Pa. Super. 2002) (A mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice); Commonwealth v. Taylor, 489 A.2d 853, 862 (Pa. Super. 1985) (it was within the trial court's discretion to admit the officer's statement even if the discovery Rule was violate). Defendant's motion for a mistrial was properly denied in light of his failure to raise this alleged violation of the rules of discovery by way of a contemporaneous objection.

In light of the foregoing it is respectfully submitted that judgment of sentence should be affirmed.

BY THE COURT:

James P. Bradley,                                    J.

2017 SEP 14 AM 11: 08

OFFICE OF JUDICIAL SUPPORT
DEL AWARE CO

FILED

13